## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Thomas P. Campbell, Janis Borman,<br>Diane M. Kaczorowski,<br>Timothy J. Heyden,<br>Mario A. Sirianni, Donna M. Sirianni,<br>Diane Steinagle, and<br>Norman F. Steinagle,<br><br><br><br><br>Plaintiffs,<br><br>-v-<br><br>Watermark Financial Services<br>Group, Inc., Watermark M-One<br>Holdings, Inc., M-One Financial<br>Services, LLC., Watermark Capital<br>Group, LLC., Guy W. Gane, Jr.,<br>Lorenzo Altadonna, Deborah Galas<br>Thomas Brick, Ian Gent,<br>Guy W. Gane, III, Jenna Gane,<br>Geoffrey J. Gane,<br>Konstantinos Samouilidis, and<br>John Hatcher,<br><br>Defendants. | Civil Action No. _____<br><br>COMPLAINT FOR VIOLATIONS<br>OF THE<br>FEDERAL SECURITIES LAWS<br><br>**COMPLAINT** |

Plaintiffs, Thomas P. Campbell, Janis Borman, Diane M. Kaczorowski, Timothy J. Heyden,

Mario A. Sirianni, Donna M. Sirianni, Diane Steinagle and Norman F. Steinagle, individually, by their

attorneys (of Counsel, David S. Widenor, Esq.), as and for their Complaint against defendants Watermark

Financial Services Group, Inc., Watermark M-One Holdings, Inc., M-One Financial Services, LLC,

Watermark Capital Group, LLC, Guy W. Gane, Jr., Lorenzo Altadonna, Deborah Galas, Thomas Brick, Ian

Gent, Konstantinos Samouilidis, Geoffrey J. Gane, Guy W. Gane, III, Jenna Gane and John Hatcher (collectively, the "Defendants"). Plaintiffs (as defined below) allege the following based upon the investigation of Plaintiffs' counsel and through a review of Plaintiffs' documents and files. Plaintiffs believe, and so allege, that substantial additional evidentiary support exists for the allegations set forth herein and will be obtained after a reasonable opportunity for formal discovery.

## SUMMARY OF THE ACTION

1.    Gane Jr., through his company, M-One and with the aid and abet of others, concocted and orchestrated a massive financial scheme to defraud Plaintiffs (and other investors) through a Ponzi scheme out of millions of dollars. The above named Plaintiffs collectively lost over a half of million dollars. In sum, Defendants (and others yet unknown) fraudulently lured investors to invest and maintain hundreds of millions of dollars with Defendants, through a scheme of improper acts and continuing misrepresentations and omissions regarding the business practices and financial results, operations and conditions of Defendants' businesses. Defendants then unlawfully pilfered and squandered millions of dollars that Plaintiffs and other investors had entrusted to Defendants for financial investment.

2.    From at least May 2005 through May 2008, Gane Jr., Altadonna, Galas and Brick (and possibly others) (hereinafter collectively referred to as the "Defendant Brokers"), as purported registered representatives associated until January 2008 with a registered broker-dealer, raised over $5.7 million in fraudulent, unregistered securities transactions. Defendant Brokers generated over $5.1 million by selling "convertible debentures" issued by a number of different entities such as Watermark Financial, Watermark Holdings, Covenant Network LLC, As It Is, Inc. (or by M-One for the benefit of Watermark) to approximately 120 unsophisticated investors (including, without limitation, Plaintiffs). Defendant Brokers preyed on senior citizens or individuals near retirement age. Gane Jr. and Altadonna raised an additional $580,000 by selling

2

promissory notes issued by Watermark Holdings, Watermark Capital, and As It Is, Inc. that provided for monthly rates of return between 1% and 3.5% (12% to 42% annually). None of these purported securities offering was registered with the Securities Exchange Commission ("SEC").

3.      Gane Jr. is a principal of each of the issuing entities and was not associated with a registered broker-dealer when he sold some of the convertible debentures. Defendant Brokers and Gent, among others, misrepresented to investors that the money Plaintiffs and others invested would be used to purchase or develop real estate or otherwise be invested conservatively as the investment accounts were to be used as retirement funds. In reality, Defendants operated a Ponzi scheme, among other things, by:

> (a) using new investor funds to pay back earlier investors;
>
> (b) misappropriating the investors' funds by distributing such funds to himself, his family members, and others; and
>
> (c) transferring a substantial portion of investor funds to Denkon, Inc., an entity located in Palm Beach Gardens, Florida, for no apparent consideration.

4.      Most of the "convertible debentures" became due in late 2008 or will (allegedly) become due in 2009. Regarding the "convertible debentures" that have matured, Defendant Brokers partly repaid some investors using new investor funds or induced the investors to reinvest their funds in another convertible debenture to defer repayment, or have made assurances that payment was forthcoming.

5.      To the extent necessary, in the event that the SEC and the Securities Investment Protection Corporation ("SIPC") have not already done so, relief is sought herein to halt fraud and prevent Defendants from unfairly distributing the remaining assets in an unfair and inequitable manner to employees, friends and

3

relatives, at the expense of other investors, and thereafter to obtain judgment to recover the funds described herein below.

6.      To the extent necessary, in the event that the SEC or the SIPC have not already done so, Plaintiffs seek to halt the ongoing fraud, maintain the status quo and preserve any assets for Plaintiffs, including temporary restraining orders and preliminary injunctions, and an order: (i) imposing asset freezes against Defendants; (ii) maintaining communication and cooperation with the receiver, if any, appointed over the business affairs of the Corporate Defendants, (iii) allowing expedited discovery and preventing the destruction of documents; and (iv) requiring the Defendants to provide verified accountings.

7.      In the event that the SEC and the SIPC have not already done so, Plaintiffs shall also seek permanent injunctions, disgorgement of ill-gotten gains, plus prejudgment interest and civil monetary penalties against Defendants.

## FEDERAL AND STATE VIOLATIONS

8.      By virtue of the conduct alleged herein, Defendants, directly or indirectly, singly or in concert, have engaged in transactions, acts, practices, and courses of business that constitute violations of Sections 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 106-5 [17 C.F.R. § 240.10b-5], and New York General Business Law section 352 et. seq.; Defendants have also committed fraud, conversion, aided and abetted fraud, aided and abetted conversion and are in breach of the fiduciary duties owed to Plaintiffs.

9.      In addition, Defendants, directly or indirectly, singly or in concert, have engaged in transactions, acts, practices, and courses of business that constitute violations of Sections 5(a) and 5(c) of the

4

Securities Act [15 U.S.C. §§ 77 e(a) and 77e(c)] and Defendant Brokers, directly or indirectly, singly or in concert, have engaged in transactions, acts, practices, and courses of business that constitute violations of Section 15(a) of the Exchange Act [15 U.S.C § 78o(a)].

## JURISDICTION AND VENUE

10. The Court has jurisdiction over this action pursuant to Section 22 (a) of the Securities Act [15 U.S.C. Section 77v (a)] and Sections 21(e) and 27 of the Exchange Act [15 USC section 78u (e) and 78aa].

11. Venue is proper the Western District of New York under Section 22(a) of the Securities Act [15 U.S.C. § 77v] because the Defendants may be found in or are inhabitants of this District and offerings and sales of securities took place in this District. Venue is proper in the Western District of New York under Section 27 of the Exchange Act because certain of the transactions, acts, practices, and courses of business constituting the violations alleged in this Complaint occurred in this District, and the Defendants may be found in this District, or are inhabitants of this District, or transact business in this District.

12. Defendants, directly and indirectly, have made use of the means and in some counties of interstate commerce, or of the mails, in connection with the transactions, acts, practices and courses of business alleged herein. A substantial part of the events comprising Defendants' fraudulent scheme that gives rise to the Plaintiffs' claims occurred in the Western District of New York, including, but not limited to, fact that the business enterprise is located and headquartered in this District and that Defendants committed their fraudulent securities and advisor activities in this District.

## THE PARTIES

13. Plaintiffs, Thomas P. Campbell ("Campbell"), Janis Borman ("Borman"), Diane M. Kaczorowski ("Kaczorowski"), Timothy J. Heyden ("Heyden"), Mario A. Sirianni ("M. Sirianni"), Donna M.

5

Sirianni ("D. Sirianni"), Diane Steinagle ("D. Steinagle"), and Norman F. Steinagle ("N. Steinagle") (collectively, "Plaintiffs") are citizens of the State of New York. During the period stated herein, Plaintiffs invested in Watermark Debentures and were damaged as a result of Defendants' fraudulent conduct.

14.     Defendant, Watermark Financial, is a Nevada corporation formed in February 2006 with its principal place of business at 2425 Sweet Home Road, Amherst, New York 14228. Gane Jr. was its president. Watermark Financial's incorporation status has been in default since March 1, 2007. Watermark Financial was the issuer of some of the debentures sold in the fraudulent scheme.

15.     Defendant, Watermark Holdings, is a Delaware corporation with its principal place of business at 2425 Sweet Home Road, Amherst New York, 14228. Gane Jr. is its president. Watermark Holdings was the issuer of some of the debentures and promissory notes sold in the fraudulent scheme.

16.     Defendant, Watermark Capital, is a Delaware limited liability company with its principal place of business at 2425 Sweet Home Road, Amherst, New York 14228. Gane Jr. is its president. Watermark Capital was the issuer of some of the promissory notes sold in the fraudulent scheme.

17.     Defendant, M-One, is a limited liability company with its principal place of business at 2425 Sweet Home Road, Amherst, New York 14228. Gane Jr. is and was, at all material times, its president. According to some of the Watermark debentures, Watermark Holdings is M-One's parent company. Some of the debentures also recite that M-One issued them "for the benefit of" Watermark Financial. M-One also paid the expenses of the broker-dealer branch office that operated from M-One's offices in Amherst, New York.

18.     Defendant, Guy W. Gane, Jr., was and is at all material times a resident of the County of Erie, state of New York. Gane Jr. is the president and principal of the Watermark Financial, Watermark Holdings, Watermark Capital and M-One entities. Gane Jr. holds Series 1 and 7 securities licenses. From the M-One

6

offices in Amherst, NY, Gane Jr. operated a broker-dealer branch office from July 2007 through January 2008, although he was not a registered representative at that broker-dealer. Previously, Gane Jr. was a registered representative associated with and operated branches of a series of registered broker-dealers out of his M-One offices in Amherst, New York from October 2002 to April 2007. Since April 2007, Gane Jr. has not been a registered representative associated with any broker-dealer but from July 2007 through January 2008, he sold Watermark debentures. Gane Jr. himself raised approximately $1.5 million through his fraudulent sales of Watermark debentures.

19.     Defendant, Lorenzo Altadonna, was and is at all material times a resident of North Tonawanda, New York. Altadonna holds Series 6 and 63 licenses. From June 2002 to April 2007 and from July 2007 to January 2008, Altadonna was a registered representative associated with the series of registered broker-dealers that had branch offices at the M-One' offices in Amherst, New York. On January 25, 2008, Altadonna terminated his association with the last in that series of registered broker-dealers and since that time has not been a registered representative associated with any broker-dealer. Altadonna himself raised approximately $870,000 through his fraudulent sales of Watermark debentures and an additional $580,000 through his fraudulent sales of promissory notes.

20.     Defendant, Deborah Galas, was and is at all material times a resident of North Tonawanda, New York. Galas holds Series 6 and 63 licenses. From March 2004 to April 2007 and from July 2007 to January 2008, Galas was a registered representative associated with the series of registered broker-dealers that had branch offices at the M-One offices in Amherst, New York. On January 25, 2008, Galas terminated her association with the last in that series of registered broker-dealers and since that time has not been a registered representative associated with any broker-dealer. Galas raised approximately $1.5 million through her fraudulent sales of Watermark debentures.

7

21.     Defendant, Thomas Brick, was and is at all material times a resident of North Tonawanda, New York. Defendant Brick held Series 6 and 63 licenses. From June 2002 to April 2007 and from July 2007 to January 2008, Brick was a registered representative associated with the series of registered broker-dealers that had branch offices at the M-One offices in Amherst, New York. On January 25, 2008, Defendant Brick terminated his association with the last in that series of registered broker-dealers and since that time has not been a registered representative associated with any broker-dealer. Upon information and belief, Defendant Brick raised approximately $763,000 through his fraudulent sales of Watermark and other debentures.

22.     Defendant, Ian Gent, was, at all material times, the Chief Executive Officer of the Corporate Defendants. At all material times, Defendant Ian Gent was and is an individual residing at Amherst, New York.     Upon information and belief, Defendant Ian Gent participated in the Ponzi scheme to defraud Plaintiffs and others as set forth herein and otherwise substantially encouraged the fraudulent scheme and artifice and benefited therefrom.

23.     Defendant Konstantino Samouilidis, was and is at all material times, a resident of Greece. Upon information and belief, Defendant Konstantino Samoulidis aided and abetted the Ponzi scheme to defraud the Plaintiffs and others as set forth herein and otherwise substantially encouraged the fraudulent scheme and artifice and benefited therefrom.

24.     Defendant, Guy W. Gane, III, Gane Jr.'s son and resides in North Tonawanda, New York. Upon information and belief, Defendant Guy W. Gane, III, aided and abetted the Ponzi scheme to defraud the Plaintiffs and others as set forth herein and otherwise substantially encouraged the fraudulent scheme and artifice and benefited therefrom.

25.     Defendant, Jenna Gane, is Gane Jr.'s daughter and resides in North Tonawanda, New York. Upon information and belief, Defendant Guy W. Gane, III, aided and abetted the Ponzi scheme to defraud the

Plaintiffs and others as set forth herein and otherwise substantially encouraged the fraudulent scheme and artifice and benefited therefrom.

26.     Defendant, Geoffrey J. Gane ("G. Gane"), is Gane Jr.'s son and resides in North Tonawanda, New York. Upon information and belief, Defendant Geoffrey J. Gane aided and abetted the Ponzi scheme to defraud the Plaintiffs and others as set forth herein and otherwise substantially encouraged the fraudulent scheme and artifice and benefited therefrom.

27.     Defendant, John Hatcher, resides in County of Erie, New York. Upon information and belief, Defendant John Hatcher aided and abetted the Ponzi scheme to defraud Plaintiffs and others as set forth herein and otherwise substantially encouraged the fraudulent scheme and artifice and benefited therefrom.

## FACTS

### The Convertible Debentures Offering

28.     From at least May 2005 to May 2008, Defendant Brokers and Defendant Gent (and others) solicited approximately 120 Buffalo-area investors (including all the named Plaintiffs herein), a number of whom are senior citizens, to invest at least $5.1 million in "convertible debentures" issued by Defendants Watermark Financial, Watermark Holding (or by M-One for the benefit of Watermark) as well as As it Is, Inc. and Covenant Network LLC ("Debentures").

29.     Under the terms of the Debentures, Defendants promised investors a fixed 10% annual return on the principal amount of the investment.

30.     The Watermark Debentures generally had a one- or two- year maturity, at which time Defendants promised to pay investors their principal plus accrued interest. Plaintiffs and other investors also

9

had the option to convert all or part of the face value of the Watermark Debentures and accrued interest into shares of Watermark common stock allegedly at the investors' discretion on or before the debentures' maturity dates.

31.     The As It Is Debentures generally had a one- or two- year maturity, at which time Defendants promised to pay investors their principal plus accrued interest. Plaintiffs and other investors also had the option to convert all or part of the face value of the As It Is Debentures and accrued interest into shares of As It Is common stock allegedly at the investors' discretion on or before the debentures' maturity dates.

32.     In an effort to locate potential investors for the fraudulent Debentures offering, Defendant Brokers and Defendant Gent associated themselves with various broker-dealers registered with the SEC. After building a customer relationship with certain investors (including, Plaintiffs) by selling them annuities and mutual funds, Defendant Brokers offered and sold these investors the Debentures.

33.     Defendant Brokers also induced some investors to liquidate other investments in order to purchase the Debentures by representing that Defendants would pay a higher, fixed return, usually 10% per year, and would pay any fees associated with the surrender of the investments.

34.     Defendant Brokers and Defendant Gent represented that every investment was guaranteed.

35.     Defendants Brokers and Defendant Gent also directed a number of investors who had their assets in individual retirement accounts ("IRAs") to open new accounts with a third-party administrator and custodian of self-directed IRAs, such as Pensco Trust Company (the "Administrator").

36.     At Defendant Brokers' and Gent's direction, the investors (including Plaintiffs) transferred IRA assets to the new accounts with the Administrator and then invested in the Debentures through the Pensco accounts. These customers received quarterly account statements from the alleged trusted Administrator

10

reflecting the value of their investments in the Debentures. Corporate Defendants generally paid the fees incurred by the investors relating to the accounts they opened with the Administrator, such as account opening or maintenance fees.

37.    In or about March 7, 2007, Plaintiff Campbell was a victim of Defendant Brokers' scheme when he rolled over his IRA into an account maintained by Pensco. Upon information and belief, Plaintiff Campbell's investment was converted into a Watermark Debenture.    Plaintiff Campbell would receive statements from Pensco disclosing the value of the account. These statements revealed that in one year's time, Plaintiff Campbell's $15,000 investment had dwindled down to $685.63 without reason. Despite receiving two checks totaling $425.28, Pensco fraudulently reported to the IRS that Pensco paid Plaintiff Campbell $2,350.56. Although Plaintiff Campbell has repeatedly demanded that Pensco correct this error, Pensco has not—all to the financial detriment of Plaintiff Campbell.

38.    Plaintiff Campbell also invested $17,135.35 with Defendant to be reinvested in his pension. Upon information and belief, Defendants did not reinvest this sum and instead converted same for their own use and benefit.

39.    In March 2008, Defendant Altadonna contacted by telephone Plaintiff D. Sirianni and advised her that he was being promoted to vice president and would no longer be able to handle Plaintiff M. Sirianni's IRA.

40.    On or about April 30, 2008, Defendant Altadonna represented to Plaintiff M. Sirianni that he could invest his IRA funds with a company called Covenant Network. Defendant Altadonna represented that Plaintiff M. Sirianni would receive 10% interest every year "guaranteed." Plaintiff M. Sirianni invested over seventy-six thousand dollars ($76,000) with Covenant Network through Defendant Altadonna. Defendant Altadonna advised Plaintiff M. Sirianni that Covenant Network provided business supplies and services to a

11

network of religious groups and churches. Defendant Altadonna further induced Plaintiff M. Sirianni to invest by claiming that this investment vehicle would only be available for a short time. Upon information and belief, Defendant Altadonna never invested said funds. To the contrary, Defendant Altadonna converted for his own use and benefit said funds.

## The Fraudulent Misrepresentations and Dissipation of Proceeds

41.     Although the Debentures do not state on their face how the proceeds of the offering would be used, Defendant Brokers and Defendant Gent told most investors that Corporate Defendants would use the offering proceeds to purchase or develop real estate. Neither Defendant Brokers nor Corporate Defendants, however, used investor funds (including those of Plaintiffs) for that purpose.

42.     Upon information and belief, approximately $5.1 million of investors' funds (including over $586,000 of Plaintiffs' funds) were deposited into bank accounts controlled by Defendant Gane Jr..

43.     Defendant Gane Jr. also transferred $216,000 in investor funds to five (5) companies in the Buffalo, New York area.

44.     Upon information and belief, Gane Jr. dissipated the investors' fund which included over $586,000 of Plaintiff's funds by:

> (a) using investor funds to pay the principal and/or interest due to other investors;
>
> (b) using investor funds to pay himself, his family members and others cohorts associated with Corporate Defendants, including, without limitation, using the funds to pay his personal expenses;
>
> (c) making cash transfers to Defendant Denkon, an entity located in Florida that operates a motorcycle parts facility; and

12

(d) transferring investors' funds to third parties for general operating expenses.

45.     Upon information and belief, the $2.86 million that Defendant Gane Jr. transferred to himself, his family members, and others connected with him or Defendant Entities is summarized below:

- Guy W. Gane, Jr.: $986,248
- Lorenzo Altadonna: $152,251
- Guy W. Gane, III: $18,720
- Jenna Gane: $15,712
- Others: $1,692,535

46.     Defendant Brokers and Defendant Gent devised and executed a scheme for the purpose of defrauding and converting funds of Plaintiffs by misrepresenting the existence of investment vehicles as well as inducing Plaintiffs to invest by misrepresenting certain rates of return, including, without limitation, drafting bogus investment documents so that Plaintiffs' funds could be brought under the control and dominion of Defendants, all to the financial detriment of Plaintiffs and others.

47.     Upon information and belief, Defendant Gane Jr. misappropriated approximately $1.97 million of investors' funds (including funds of Plaintiffs) to cover general operating expenses. For example, Defendant Gane Jr. spent at least $321,185 on travel and meals and paid approximately $79,628 in payments to a landscaper.

48.     Upon information and belief, Defendant Gane Jr. also made transfers totaling approximately $602,000 to Denkon, which owns and controls a PostNet franchise in Palm Beach Gardens, Florida.

## The Promissory Note

49.     With the various maturity dates of the Watermark Debentures looming, Defendant Altadonna raised at least $580,000 in December 2007 and January 2008 by selling to at least 4 investors short-term promissory notes issued by Watermark Holdings and Watermark Capital. The interest rates on the notes varied

13

from 1% to 33% per month (12% to 42% annually). Gane Jr. signed the promissory notes as Pres. of Watermark Capital. At least two of these notes were sold to persons who reside outside of New York State.

50.     In at least one instance, funds raised through the promissory note offerings were used to pay back an investor in the Watermark Debentures. A church located in North Tonawanda, New York had invested $200,000 in Watermark Debentures that matured in December 2007. When the church sought to cash out the investment upon maturity, Gane Jr. convinced the church to remain invested in the debentures by promising a monthly interest payment and assuring that the church could liquidate the investment at any time. When the church requested a return of its principal and interest in January 2008, Defendant Altadonna raised the cash by inducing a different investor to invest $200,000 in the promissory notes. Defendant Altadonna told the new investor that its funds would be used to invest in real estate or an unspecified business, but instead used the proceeds to pay the church.

51.     Plaintiffs D. Sirianni and D. Steinagle invested collectively $200,000 with Defendants.

52.     Defendants knew or were reckless in not knowing that they were conducting a Ponzi scheme and that the proceeds of the sales of the Debentures were not being used for real investment purposes, such as real estate development or internet business generation.

53.     When Plaintiffs' began demanding their principal back, Defendant Brokers and Defendant Gent made further misrepresentations to Plaintiffs by telling them that their funds were located in Greece and that Defendants Brokers and Defendant Gent were having problems obtaining the funds because of a bank strike in Greece.

54.     Upon information and belief, no assets or proceeds of the sale of Debentures were transferred to Greece.

14

## The Sales of the Debentures Were Not Registered

55.     Defendant Brokers and Defendant Gent sold the Debentures to approximately 120 investors (including Plaintiffs), a number of whom are senior citizens.

56.     From May 2005 to the present, the Debenture offering scheme has raised at least $5.1 million (which amount includes Plaintiffs' funds).

57.     Corporate Defendants did not register the Debentures offering with the SEC at any time.

## Defendant Brokers Were Not Registered or Associated with a Broker-Dealer at Relevant Times

58.     From July 2007, the Debenture sales were made out of a broker-dealer branch office that Defendant Gane Jr.'s company, Defendant M-One, operated and financed and that Defendant Gane Jr. set up in the same Amherst, New York, building that housed his other companies.

59.     Defendant Brokers and Defendant Gent were engaged in soliciting purchases of, and effecting transactions in, Debentures and received compensation based on those transactions, and paid the expenses and commissions of a sales force to promote those transactions.

60.     Defendants Gane (offspring), Samouilidis, Denkon, As It Is, and Covenant Network LLC substantially assisted and/or encouraged Defendant Brokers' and Defendant Gent's wrongful activities to defraud Plaintiffs in, among other things and upon information and belief, preparing investment records and documents, participating in business plan meetings in the state of Maine as well as soliciting certain investors.

61.     From April 2007 to the present, Defendant Gane Jr. was neither registered as a broker or dealer nor was he an associated person acting under the supervision of a registered broker or dealer.

15

62.     From April to June 2007 and after January 2008, the other Defendant Brokers were neither registered as a broker or dealer nor were they associated persons acting under the supervision of a registered broker or dealer.

63.     Defendant Brokers and Defendant Gent acted in concert with, dominated or otherwise controlled the operations of Watermark Financial, Watermark Holdings, Watermark Capital, and M-One.

64.     Defendant Brokers planned, orchestrated and executed the wrongdoing as alleged on behalf of themselves individually and through the Corporate Defendants, which Defendant Brokers controlled and operated for their own personal benefit and as their own alter egos. Among other things, Defendant Brokers completely dominated and controlled the Corporate Defendants (particularly with respect to the misrepresentations and omissions made to Plaintiffs and other investors and the misappropriation and other dissipation of the proceeds generated by the Debentures).

65.     Defendants Brokers exercised that domination and control to facilitate and enable the alleged fraud and other misconduct that resulted in the damages suffered by Plaintiffs. Accordingly, the acts and omissions of each of Corporate Defendants should be attributed to one another and to Defendant Brokers personally.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT BROKERS

### (Violations of 10(b) of the Security Exchange Act of 1934)

66.     Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein at length.

67.     Defendants, directly or indirectly, singly or in concert, in connection with the purchase and sale of securities, by use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange violated section 10(b) and Rule b-5 by:

16

(a) employing devices, schemes, and artifices or are employing, or are about to employ, devices, schemes, or artifices to defraud;

(b) making untrue statements of material facts and omitting to state material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

(c) engaging in acts, or are about to engage in acts, practices, or courses of business which operate, operated, or would operate as a fraud or deceit upon other persons.

68.   By reason of the foregoing, Defendants, directly or indirectly, have violated, are violating, and unless enjoined will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §240.10b-5] and New York General Business Law section 352 et. seq.

69.   As a result of the foregoing, Plaintiffs have suffered considerable financial loss and damages, and hereby seek to recover the sums of $586,000, plus interest from the date of conversion, and punitive damages in an amount deemed appropriate by this Court, together with costs and disbursements of bringing this action and such other and further relief as this Court deems just and proper.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT BROKERS

### (Violations of Sections 5(a) and 5(e) of the Securities Act)

70.   Plaintiffs reallege and incorporate the above paragraphs by reference as if fully set forth herein at length.

71.   From at least May 2005 to January 2008, Defendants, directly or indirectly, singly or in concert, offered and sold Debentures to Plaintiffs when no registration statement was filed with the SEC or in effect as to such securities.

72.   In offering and selling the Debentures, Defendants, directly or indirectly, singly or in concert, have made use of the means or instruments of transportation or communication in interstate

17

commerce, or of the mails, to offer and sell securities through the use or medium of a prospectus or otherwise, or have carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, securities for the purpose of sale or for delivery after sale, when no registration statement has been filed or was in effect as to such securities and when no exemption from registration was applicable.

73. By reason of the foregoing, Defendants have violated, are violating, and unless enjoined will again violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C §§ 77e(a) and 77(c)].

## AS AND FOR A THIRD CAUSE OF ACTION
## AGAINST DEFENDANT BROKERS AND DEFENDANT GENT

### (Breaches of Fiduciary Duties Owed and Gross Misconduct)

74. Plaintiffs reallege and incorporate the above paragraphs by reference as if fully set forth herein at length.

75. From at least May 2005 through May 2008, Defendant Brokers and Defendant Gent, in the offer and sale of securities, by the use of the means and instruments of transportation and interstate commerce or by the use of the mails, directly and indirectly, have obtained and are obtaining money and property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading, and have engaged in our engaging in transactions, practices or courses of business which have operated and will operate as a fraud and deceit upon investors.

76. Defendant Brokers owed Plaintiffs the fiduciary duties recited herein.

77. Defendant Gent owed Plaintiffs the fiduciary duties recited herein.

78. As a principal or primary owner of the Corporate Defendants that both solicited and accepted the investments of Plaintiffs, Defendant Brokers and Defendant Gent owed a fiduciary duty to such Plaintiffs to act in good faith and in full compliance with Federal and New York law.

18

79.   By the action described herein constituting fraud and malfeasance, Defendant Brokers and Defendant Gent hereby breached such duties.

80.   The wrongful conduct of Defendant Brokers and Defendant Gent constitutes a breach or breaches of fiduciary duties owed by Defendant Brokers and Defendant Gent to Plaintiffs and/or constitute gross misconduct on the part of Defendant Brokers and Defendant Gent.

81.   As a result of the foregoing, Plaintiffs have suffered considerable financial loss and damages, and hereby seek to recover the sums of over $586,000, plus interest from the date of conversion, and punitive damages in an amount deemed appropriate by this court, together with costs and disbursements of bringing this action and such other and further relief as this Court deems just and proper.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANT BROKERS AND DEFENDANT GENT

### (Negligent and/or Intentional Misrepresentation)

82.   Plaintiffs reallege and incorporate the above paragraphs by reference as if fully set forth herein at length.

83.   From at least May 2005 through May 2008, Defendant Brokers and Defendant Gent, in the offer and sale of securities, by the use of the means and instruments of transportation and interstate commerce or by the use of the mails, directly and indirectly, have obtained and are obtaining money and property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading, and have engaged in our engaging in transactions, practices or courses of business which have operated and will operate as a fraud and deceit upon investors.

84.   Defendant Gane Jr made knowingly false misrepresentations to Plaintiffs by claiming that Plaintiffs' funds would be used in a real estate development investment projects.

19

85.   Defendant Gane, Jr. and Defendant Gent made knowingly false misrepresentations to Plaintiff Borman when he advised that he would invest her funds in conservative investment and instead invested them, without her permission and/or authority, in As It Is Debentures.

86.   Upon information and belief, Defendant Brokers and As It Is acted in concert to defraud and misrepresent their investment vehicles. Defendant Brokers fraudulent induced Plaintiff Borman to execute investment documents without disclosing that Defendant Brokers would invest Plaintiff's funds in As It Is.

87.   Defendants knew or were reckless in not knowing of the activities described above. As Defendants have been transacting business in a matter which appears legitimate and successful in conjunction with Corporate Defendants for several years, Plaintiffs justifiably relied upon the statements and assertions that such business was legitimate.

88.   In accordance with such reliance, Plaintiffs invested considerable sums of money with Defendant Brokers and Defendant Gent, with the expectation that such monies being invested were being controlled by legal enterprise.

89.   By reason of the activities described herein, Plaintiffs have suffered considerable financial loss and damages, and hereby seek to recover the sums of over $586,000, plus interest from May 2008, together with costs and disbursements of bringing this action and such other further relief as is Court deems just and proper, and punitive damages in an amount deemed proper at by this Court.

20

## AS AND FOR FIFTH CAUSE OF ACTION
## AS AGAINST DEFENDANT BROKERS AND DEFENDANT GENT

### (Fraud and Deceit)

90.   Plaintiffs reallege and incorporate the above paragraphs by reference as if fully set forth herein at length.

91.   Plaintiffs bring this claim for fraud against the Defendants.

92.   From these May 2005, Defendants made numerous and continuing material misrepresentations and omissions regarding the financial results, operations and conditions of the business practices of the Corporate Defendants.

93.   Among other things, as alleged herein, Defendant Brokers and Defendant Gent made misrepresentations and omissions including, without limitation, false records and reports of the rate of return of the Debentures' rates of return in total value, false reports of the accumulated profits and net asset valuation of the Debentures, false reports that the Debentures were being independently and truthfully audited when, in fact, the Debentures were essentially a sham and the Debentures were engaged in massive fraud upon Plaintiffs; and false reports regarding the financial condition and results for the Debentures, when in reality, Defendants have wrongfully converted or otherwise dissipated the monies invested in the Debentures, all as alleged more fully herein.

94.   Similarly, Plaintiffs were fraudulently induced to enter into contractual, legal, fiduciary and other relationships with Defendants, as alleged herein.

95.   As a result, any contractual or other purported disclaimers of liability or limitation on Plaintiffs' right to sue are void *ab initio*, including, without limitation, any agreement purportedly at requiring some or all of the claims to be submitted to arbitration.

21

96. Defendant Brokers and Defendant Gent knowingly uttered falsehoods intending to deprive Plaintiffs of a benefit and that Plaintiffs' were thereby deceived and damaged.

97. The above and foregoing actions of Defendant Brokers and Defendant Gent give rise to a cause of action for fraud due to the knowing and intentional misrepresentations made by Defendant Brokers to Plaintiffs regarding the management and rate of return of Plaintiffs' investments.

98. By reason of the foregoing, Defendants have committed fraud upon Plaintiffs and are liable for the damages caused thereby in an amount to be established at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION
## AGAINST DEFENDANTS

### (Conversion)

99. Plaintiffs reallege and incorporate the above paragraphs by reference as if fully set forth herein at length.

100. Plaintiffs bring this claim for conversion against the Defendants.

101. Plaintiffs are the rightful owners of the funds purportedly taken by Defendants for investment purposes ("Plaintiffs' Funds").

102. Defendants seized and converted for Defendants' use and benefit Plaintiffs' Funds.

103. Plaintiffs, actually and constructively, requested the return of Plaintiffs' Funds and all other related interests, profits, income or other appreciation.

104. Defendants have not returned Plaintiffs' Funds to Plaintiffs, but have instead deprived Plaintiffs of their rightful investment proceeds.

22

105. Defendants' intentional, willful and malicious conversion of Plaintiffs' Funds has resulted in a deprivation of the use, enjoyment, and benefit of Plaintiffs' Funds by Plaintiffs respectfully.

106. Defendants were not authorized to withhold and or withdraw Plaintiffs' Funds and other monies.

107. Defendants' unauthorized withholding and misappropriation of Plaintiffs' Funds and other monies was substantial, directed proximate cause of damages suffered by Plaintiffs.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## AGAINST DEFENDANT GUY W. GANE, III
### (Aiding and Abetting Conversion and Fraud)

108. Plaintiffs reallege and incorporate the above paragraphs by reference as if fully set forth herein at length.

109. Defendant Guy W. Gane, III, did assist and/or encourage Defendant Brokers and Defendant Gent, as principals, to seize, convert and defraud Plaintiffs' Funds.

110. Defendant Guy W. Gane, III, did commit wrongful acts producing an injury to Plaintiffs.

111. Defendant Guy W. Gane, III, knowingly participated in Defendant Brokers' and Defendant Gent's illegal and tortuous scheme by providing assistance and/or encouragement to Defendant Brokers and Defendant Gent, as principals, in seizing, converting and defrauding Plaintiffs' Funds.

112. Defendant Guy W. Gane, III, knowingly, intentionally and substantially assisted the principals, Defendants Brokers and Defendant Gent, in injuring Plaintiffs.

113. As a direct and proximate result of the wrongful conduct of Defendant Guy W. Gane, III, Plaintiffs have been deprived Plaintiffs' Funds.

114. Additionally, by reason of the intentional, willful and malicious nature of the aiding and abetting by Defendant Guy W. Gane, III, Plaintiffs are entitled to recovery of exemplary and/or punitive damages in the amount of $3,000,000.

23

## AS AND FOR A EIGHTH CAUSE OF ACTION
## AGAINST DEFENDANT JENNA GANE

### (Aiding and Abetting Conversion and Fraud)

115. Plaintiffs reallege and incorporate the above paragraphs by reference as if fully set forth herein at length.

116. Defendant Jenna Gane did assist and/or encourage Defendant Brokers and Defendant Gent, as principals, to seize, convert and defraud Plaintiffs' Funds.

117. Defendant Jenna Gane did commit wrongful acts producing an injury to Plaintiffs.

118. Defendant Jenna Gane knowingly participated in Defendant Brokers' and Defendant Gent's illegal and tortuous scheme by providing assistance and/or encouragement to Defendant Brokers and Defendant Gent, as principals, in seizing, converting and defrauding Plaintiffs' Funds.

119. Defendant Jenna Gane knowingly, intentionally and substantially assisted the principals, Defendants Brokers and Defendant Gent, in injuring Plaintiffs.

120. As a direct and proximate result of the wrongful conduct of Defendant Jenna Gane, Plaintiffs have been deprived Plaintiffs' Funds.

121. Additionally, by reason of the intentional, willful and malicious nature of the aiding and abetting by Defendant Jenna Gane, Plaintiffs are entitled to recovery of exemplary and/or punitive damages in the amount of $3,000,000.

## AS AND FOR A NINTH CAUSE OF ACTION
## AGAINST DEFENDANT GEOFFERY J. GANE

### (Aiding and Abetting Conversion and Fraud)

122. Plaintiffs reallege and incorporate the above paragraphs by reference as if fully set forth herein at length.

123. Defendant G. Gane did assist and/or encourage Defendant Brokers and Defendant Gent, as principals, to seize, convert and defraud Plaintiffs' Funds.

24

124. Defendant G. Gane, did commit wrongful acts producing an injury to Plaintiffs.

125. Defendant G. Gane, knowingly participated in Defendant Brokers' and Defendant Gent's illegal and tortuous scheme by providing assistance and/or encouragement to Defendant Brokers and Defendant Gent, as principals, in seizing, converting and defrauding Plaintiffs' Funds.

126. Defendant G. Gane, knowingly, intentionally and substantially assisted the principals, Defendants Brokers and Defendant Gent, in injuring Plaintiffs.

127. As a direct and proximate result of the wrongful conduct of Defendant G. Gane, Plaintiffs have been deprived Plaintiffs' Funds.

128. Additionally, by reason of the intentional, willful and malicious nature of the aiding and abetting by Defendant G. Gane, Plaintiffs are entitled to recovery of exemplary and/or punitive damages in the amount of $3,000,000.

## AS AND FOR A TENTH CAUSE OF ACTION
## AGAINST DEFENDANT SAMOUILIDIS

### (Aiding and Abetting Conversion and Fraud)

129. Plaintiffs reallege and incorporate the above paragraphs by reference as if fully set forth herein at length.

130. Defendant Samouilidis did assist and/or encourage Defendant Brokers and Defendant Gent, as principals, to seize, convert and defraud Plaintiffs' Funds.

131. Defendant Samouilidis did commit wrongful acts producing an injury to Plaintiffs.

132. Defendant Samouilidis knowingly participated in Defendant Brokers' and Defendant Gent's illegal and tortuous scheme by providing assistance and/or encouragement to Defendant Brokers and Defendant Gent, as principals, in seizing, converting and defrauding Plaintiffs' Funds.

133. Defendant Samouilidis knowingly, intentionally and substantially assisted the principals, Defendants Brokers and Defendant Gent, in injuring Plaintiffs.

25

134. As a direct and proximate result of the wrongful conduct of Defendant Samouilidis, Plaintiffs have been deprived Plaintiffs' Funds.

135. Additionally, by reason of the intentional, willful and malicious nature of the aiding and abetting by Defendant Samouilidis, Plaintiffs are entitled to recovery of exemplary and/or punitive damages in the amount of $3,000,000.

## AS AND FOR A ELEVENTH CAUSE OF ACTION AGAINST DEFENDANT JOHN HATCHER

### (Aiding and Abetting Conversion and Fraud)

136. Plaintiffs reallege and incorporate the above paragraphs by reference as if fully set forth herein at length.

137. Defendant Hatcher did assist and/or encourage Defendant Brokers and Defendant Gent, as principals, to seize, convert and defraud Plaintiffs' Funds.

138. Defendant Hatcher did commit wrongful acts producing an injury to Plaintiffs.

139. Defendant Hatcher knowingly participated in Defendant Brokers' and Defendant Gent's illegal and tortuous scheme by providing assistance and/or encouragement to Defendant Brokers and Defendant Gent, as principals, in seizing, converting and defrauding Plaintiffs' Funds.

140. Defendant Hatcher knowingly, intentionally and substantially assisted the principals, Defendants Brokers and Defendant Gent, in injuring Plaintiffs.

141. As a direct and proximate result of the wrongful conduct of Defendant Hatcher, Plaintiffs have been deprived Plaintiffs' Funds.

142. Additionally, by reason of the intentional, willful and malicious nature of the aiding and abetting by Defendant Hatcher, Plaintiffs are entitled to recovery of exemplary and/or punitive damages in the amount of $3,000,000.

**WHEREFORE**, the Plaintiffs respectfully request that the Court grant the following relief:

a)      Finding Defendants and their agents, servants, employees, and attorneys and all persons in active concert or participation with them committed the misconduct and violations alleged herein;

b)      money damages, including, but not limited to, compensatory, trouble and punitive damages, together with interest thereon, to the maximum extent permitted by law; and

c)      awarding Plaintiffs their costs and expenses of this litigation, including, but not limited to, reasonable attorneys' fees, experts, fees and other costs and disbursements;

d)      directing that all funds traceable to the Watermark debenture be placed in a constructive trust and distributed ratably to Plaintiffs; and

e)      awarding Plaintiffs such other further relief as may be deemed just and proper under the circumstances.

## JURY DEMAND

Plaintiffs, individually and collectively, demand a trial by jury of all claims and issues so triable.

Dated: July 1, 2009
        Buffalo, New York

David S. Widenor, PC

Widenor

David S. Widenor, Esq.
390 Elmwood Avenue
Buffalo, New York 14222
Telephone: 716-898-8185

*Attorneys for Plaintiffs:*
*Campbell, Borman, Kaczorowski, Heyden,*
*Siriannis, and Steinagles*